Joseph W. Cotchett (36324)
Steven N. Williams (175489)
Adam J. Zapala (245748)
Elizabeth Tran (280502)
Joyce Chang (300780)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com
jchang@cpmlegal.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **STEPHANIE JUNG on behalf of herself and all others similarly situated,** | Case No. |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMAND** |
| **AMERICAN AIRLINES, INC., DELTA AIR LINES, INC., SOUTHWEST AIRLINES CO., and UNITED AIRLINES, INC.** | |
| **Defendants.** | |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

I.    NATURE OF ACTION ................................................................................................. 1

II.   PARTIES ..................................................................................................................... 1

        A.    Plaintiff ......................................................................................................... 1

        B.    Defendants ..................................................................................................... 1

        C.    Unnamed Co-Conspirators and Agents ....................................................... 2

III.  JURISDICTION AND VENUE ................................................................................. 3

IV.   INTERSTATE TRADE AND COMMERCE ............................................................ 4

V.    CLASS ACTION ALLEGATIONS ........................................................................... 4

VI.   FACTUAL BACKGROUND ..................................................................................... 6

VII.  CLAIM FOR RELIEF .............................................................................................. 11

COUNT ONE
VIOLATION OF THE SHERMAN ACT
*On Behalf of Plaintiffs and the Class, For Violation of*
*Sherman Act Section One, 15 U.S.C. § 1* .......................................................................... 11

PRAYER FOR RELIEF .......................................................................................................... 12

DEMAND FOR JURY TRIAL ............................................................................................... 13

**CLASS ACTION COMPLAINT**

i

Plaintiff Stephanie Jung ("Plaintiff"), through the undersigned attorneys, and on behalf of herself and all others similarly situated (the "Class"), bring this action for damages and equitable relief against American Air Lines, United Air Lines, Delta Air Lines, and Southwest Air Lines (together, "Defendants") pursuant to the federal antitrust laws and Rule 23 of the Federal Rules of Civil Procedure.

This Complaint is alleged upon information and belief, except as to those allegations which pertain to the named Plaintiff, which are alleged on Plaintiff's personal knowledge.

## I.  NATURE OF ACTION

1.      This action seeks to challenge conduct of Defendants in violation of the federal antitrust laws. Beginning on or about July 1, 2011, and continuing to the present (the "Class Period"), Defendants have illegally colluded to fix, raise, and maintain the price of domestic air passenger transportation through various means, including by eliminating or restricting the supply of domestic air transportation – otherwise known as seating "capacity." Defendants' conduct has led to reduced competition and increased prices for domestic air passenger transportation, and has caused antitrust injury to Plaintiff and members of the Class who have paid higher prices for domestic air transportation than they would have in the absence of Defendants' conduct. Defendants' conduct continues, and in the absence of the relief sought in this action, will continue.

## II.  PARTIES

### A.      Plaintiff

2.      Plaintiff Stephanie Jung is a resident of San Francisco, California, and during the relevant Class Period purchased domestic air transportation from one or more Defendants. As a result of Defendants' actions described herein, Plaintiff paid more than she would have paid for domestic air transportation in the absence of Defendants' conduct and was therefore injured in her business and/or property.

### B.      Defendants

3.      Defendant American Airlines, Inc. (hereinafter, "American") is a Delaware corporation with its principal place of business in Fort Worth, Texas. American sells and provides

domestic air transportation services throughout the United States, including substantial operations which it provides as one of the two tenants of Terminal 2 at San Francisco International Airport, within this District.

4. Defendant Delta Air Lines, Inc. (hereinafter, "Delta") is a Delaware corporation with its principal place of business in Atlanta, Georgia. Delta sells and provides domestic air transportation services throughout the United States, including substantial operations at Terminal 1 at San Francisco International Airport, within this District.

5. Defendant Southwest Airlines Co. (hereinafter, "Southwest") is a Texas corporation with its principal place of business in Dallas, Texas. Delta sells and provides domestic air transportation services throughout the United States, including substantial operations at Terminal 1 at San Francisco International Airport, within this District.

6. Defendant United Air Lines (hereinafter, "United") is a Delaware corporation with its principal place of business in Chicago, Illinois. United sells and provides domestic air transportation services throughout the United States, including substantial operations which it provides as the only tenant at Terminal 3 at San Francisco International Airport, within this district.

## C.  <u>Unnamed Co-Conspirators and Agents</u>

7. Other entities are not named as defendants in this Complaint even though they took part in the conduct alleged herein. For example, during the Class Period, U.S. Airways was a separate entity prior to its merger with American Airlines, and conspired with the other named Defendants to engage in the conduct alleged in this Complaint. All allegations made herein relating to the named Defendants' illegal conduct are also made against the unnamed co-conspirators.

8. Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

### III.  JURISDICTION AND VENUE

9.      Plaintiff brings this action for damages and injunctive relief pursuant to section 1 of the Sherman Act (15 U.S.C. § 1) and sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26. Plaintiff seeks to recover treble damages for Defendants' illegal conduct. Plaintiff and the Class also seek attorneys' fees, costs, and other expenses.

10.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. §§ 1331 and 1337 and sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

11.     Venue is proper in this District pursuant to sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. §§ 1391(b), (c) and (d) in that Defendants transact business, reside, are found within, and have agents within this District, a substantial part of the events complaint of occurred in this District, and a substantial portion of the affected interstate trade and commerce described in this Complaint took place within this District. Plaintiff Stephanie Jung also suffered harm in this District as a result of Defendants' unlawful conduct.

12.     This Court has *in personam* jurisdiction over the Defendants because the Defendants, either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) are at home in this District and transacted business in this District; (b) had substantial aggregate contacts with this forum; and/or (c) were engaged in an illegal restraint of trade that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. In particular, Defendants American Air Lines, Delta Air Lines, Southwest Airlines Co., and United Air Lines have regularly conducted substantial business at San Francisco International Airport, within this District.

13.     The Defendants engaged in conduct that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

14.     The activities of the Defendants were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States.

## IV.  INTRADISTRICT ASSIGNMENT

15.     Intradistrict assignment to the San Francisco Division is appropriate. Plaintiff Stephanie Jung resides in San Francisco.  Moreover, the conduct at issue adversely affects air passengers who reside in this division and paid supracompetitive airfares, baggage fees and cancellation fees to Defendants. Antitrust class actions involving claims of price-fixing on fares and/or fuel surcharges by airlines have previously been filed in the San Francisco Division and were or are being presided over by the Honorable Charles R. Breyer. See *In re Transpacific Passenger Air Transportation Antitrust Litig*., MDL No. 1913, No. 07-CV-5634-CRB (N.D. Cal.); *In re International Air Transportation Surcharge Antitrust Litig*., MDL No. 1793, No. M06-1793 CRB (N.D. Cal.).

## V.  INTERSTATE TRADE AND COMMERCE

16.     During the class period there was an uninterrupted and continuous flow of commerce including payments, invoices for payments, and other documents necessary to Defendants' sale of domestic air passenger transportation to Plaintiff and members of the Class, transmitted in interstate commerce between and among Defendants' offices and their customers located throughout the United States.

17.     Throughout the class period, Defendants transported millions of passengers in a continuous and uninterrupted flow of interstate commerce between various airports in this District and throughout the United States.

18.     Defendants conduct as alleged herein and a direct effect on United States' commerce throughout the class period.

## VI.  CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b) seeking certification of a class seeking damages and injunctive relief.

20.     The proposed class is of all persons and entities that purchased domestic air transportation from Defendants or any predecessor, subsidiary, or affiliate of Defendants at any time

from July 1, 2011 to the present. Excluded from the Class are Defendants, any predecessor, parent, subsidiary, or affiliate of Defendants, their officers, directors, employees and immediate families, and any judicial officer who presides over this action.

21.     Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants. Plaintiff believes that, due to the nature of the trade and commerce involved, there are millions of Class members, such that joinder of all Class members is impracticable.

22.     Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, including;

(a)     Whether the Defendants engaged in an agreement, contract, or combination to restrain trade in the market for domestic air transportation;

(b)     Whether Defendants' conduct caused Class members to pay more for domestic air transportation than they would have in the absence of the Defendants' conduct;

(c)     Whether Plaintiff and the other members of the Class were injured by Defendants' conduct, and, if so, the appropriate class-wide measure of damages for Class members; and

(d)     The scope of any injunctive relief to which Plaintiff and the other members of the Class are entitled.

23.     Plaintiff's claims are typical of the claims of the Class because, like other Class members, Plaintiff paid higher prices for domestic air transportation than they would have in the absence of Defendant's conduct.

24.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class.

25.     Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflict with other members of the Class.

26.     Plaintiff will fairly and adequately represent the interests of the Class in that she has retained competent counsel experienced in antitrust, class action, and other complex litigation.

Counsel for Plaintiff has been one of two co-lead counsel in two of the most important antitrust class actions brought in recent years involving anticompetitive conduct targeting passenger air transportation, specifically *In re Air Transportation Antitrust Litigation* and *In re Transpacific Air Transportation Antitrust Litigation* Both of these cases led to substantial recoveries for the classes represented by counsel for Plaintiff, and both led to important and groundbreaking legal decisions.

27.     This class action is superior to any other method for the fair and efficient adjudication of this dispute because (1) the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, establishing inconsistent standards of conduct for Defendants; (2) prosecution as a class action will eliminate the possibility of repetitious litigation; (3) the Class is readily definable and one for which Defendants should have records in their files; (4) prosecution as a class will permit the adjudication of many claims by many Class members in a single forum, thus creating judicial efficiencies and eliminating the duplication of effort that would otherwise be required; (5) Class treatment will permit the adjudication of claims by many class member for whom pursuing claims would otherwise be economically prohibitive.

28.     There will be no extraordinary difficulty in the management of this class action.

### VII. FACTUAL BACKGROUND

29.     Domestic scheduled air passenger service enables consumers to travel quickly and efficiently between various cities in the United States. Air travel offers passengers significant time savings and convenience over other forms of travel. By way of example, a flight from San Francisco to New York takes approximately six hours, while driving that distance would take approximately 40 hours driving non-stop.

30.     The United States domestic air transportation industry is an oligopoly. It is estimated that the four Defendants control 80% of the industry.

31.     This is a result of the consolidation within the industry within the past ten years. For example, in 2005 US Airways and America West merged. In 2008, Delta and Northwest Airlines merged. In 2010 United Airlines and Continental merged. In 2011 Southwest Airlines and AirTran merged. In 2013 US Airways and American Airlines merged.

32. Because of concerns about the about the increasing consolidation and coordinated anticompetitive conduct in the domestic air passenger industry, in August 13, 2013, the United States Department of Justice ("DOJ") filed a complaint to challenge the merger of American and U.S. Airways.

33. In that complaint, DOJ noted a number of ways in which the domestic airline carriers, including Defendants, engage in anticompetitive conduct. For example, DOJ noted that the legacy airlines (Delta, United, American) use what they call "cross-market initiatives," or "CMIs," to deter aggressive discounting and prevent fare wars. A CMI occurs where two or more airlines compete against each other on multiple routes. If an airline offers discounted fares in one market, an affected competitor often responds with discounts in another market—a CMI—where the discounting airline prefers a higher fare. CMIs often cause an airline to withdraw fare discounts.

34. The DOJ complaint also observed that all airlines have complete, accurate, and real-time access to every detail of every airline's published fare structure on every route through the airline-owned Airline Tariff Publishing Company ("ATPCO"). The airlines use ATPCO to monitor and analyze each other's fares and fare changes and implement strategies designed to coordinate pricing. Airlines have previously used ATPCO to engage in coordinated behavior. In 1992, the United States filed a lawsuit to stop several airlines from using their ATPCO filings as a signaling device to facilitate agreements on fares. That lawsuit resulted in a consent decree, which has now expired.

35. The DOJ complaint specifically cited to a US Airways document that referred to industry consolidation as the "New Holy Grail," and illustrated how the number of major airlines dropped from nine to five since 2005.

36. Several months after filing, DOJ settled its case and permitted the merger to proceed subject to a number of gate divestitures. Specifically, DOJ required the companies to divest slots and gates to low-cost carriers at key constrained airports nationwide, including Washington Reagan National, New York LaGuardia, Boston Logan, Chicago O'Hare, Dallas Love Field, Los Angeles International, and Miami International

37.     Nevertheless, as the DOJ noted in its complaint, increasing consolidation caused by the various mergers in the past decade has allowed the airlines to exercise "capacity discipline." "Capacity discipline" has meant restraining growth or reducing established service. In theory, reducing unused capacity can be an efficient decision that allows a firm to reduce its costs, ultimately leading to lower consumer prices. In the airline industry, however, recent experience has shown that capacity discipline has resulted in fewer flights and higher fares.

38.     As James Stewart noted in a June 2015 *New York Times* column, "'Discipline' is classic oligopoly-speak for limiting flights and seats, higher prices and fatter profit margins." The airlines are committed to this capacity discipline. For example, in a January 2015 article, Jeff Sismek, CEO of United was quoted as saying: "[w]e will absolutely not lose our capacity discipline…."

39.     This commitment to "capacity discipline" was demonstrated by the industry reaction to a statement by Southwest. In May 2015, Southwest's chief executive, Gary C. Kelly, said the airline was going to increase capacity by as much as 8 percent. In response, the other carriers were vocal about the continued need for capacity discipline. In June 2015, at the annual meeting of the International Air Transport Association ("IATA"), several chief executives of the major airlines spoke publicly about the need for "discipline" within the industry. Delta's President, Ed Bastian, said that Delta is "continuing with the discipline that the marketplace is expecting." American's chief executive, Douglas Parker, stated that the airlines had learned their lessons from past price wars; "I think everybody in the industry understands that."

40.     As Mr. Stewart's *New York Times* column noted, the pressure put on Southwest had the desired effect: "after coming under fire at this week's conference [the June 2015 IATA conference], Southwest quickly moved to reassure investors it isn't going rogue. 'We have taken steps this week to begin pulling down our second half 2015 to manage our 2015 capacity growth…' Mr. Kelly said."

41.     Mr. Stewart's article also pointed to work by Fiona Scott Morton, a professor of economics at Yale and a former deputy attorney general in the antitrust division of the Justice

Department, who co-authored a study, which concluded that "the major airlines were stifling competition by restricting the ability of consumers to use the Internet to compare airfares." Mr. Stewart observed that the study (sponsored by the Travel Technology Association) "also found minimal price and capacity competition among the major legacy carriers." Stewart's article also highlighted a finding by Professor Morton that "despite a decline in jet fuel prices of 24 percent and a drop in nonfuel operating costs of just under 3 percent in 2014, the average fare per mile increased 0.5 percent during that period."

42.     The result of the consolidation in the industry and the capacity discipline exercised by the carriers is that the airline industry is, as reported by the *New York Times*' Andrew Ross Sorkin in a March 23, 2015 piece: "increasingly looking like an uncompetitive oligopoly."

43.     Indeed, a July 1, 2015 *Washington Post* article reported that in the last year, low jet fuel prices helped the carriers save billions of dollars, "with the four major airlines saving about $3.3 billion on fuel in the first quarter alone." Yet those savings have not found their way back to passengers. According to the *Washington Post* article, the average domestic flight last year cost $391, which is "the highest price since federal statisticians started tracking fares two decades ago." The Post noted further that when "[a]djusted for inflation, fares are at a 12-year high." In addition, "[a]irlines have made billions of dollars more on bag-checking, reservation and other added fees."

44.     The result is increased profits for the domestic airlines. U.S. scheduled passenger airlines reported an after-tax net profit of $3.1 billion in the first quarter of 2015, up from $241 million in the fourth quarter of 2014 and up from $507 million in the first quarter of 2014.

45.     These developments have not gone unnoticed. For example, as reported by Mr. Sorkin, in December 2014, Senator Charles Schumer of New York stated: "'At a time when the cost of fuel is plummeting and profits are rising, it is curious and confounding that ticket prices are sky-high and defying economic gravity, . . . The industry often raises prices in a flash when oil prices spike, yet they appear not to be adjusting for the historic decline in the cost of fuel; ticket prices should not shoot up like a rocket and come down like a feather.'"

46.     Senator Schumer was not the only one troubled by these developments. In the wake of the IATA meeting in June, Senator Richard Blumenthal of Connecticut wrote a letter dated June 17, 2015 to the DOJ in which he noted that the "public display of coordination" by the airlines to engage in a strategy of capacity discipline was "highly troubling." As but one example, Senator Blumenthal quoted DOJ's "original announcement rejecting the merger [between US Airways and American Airlines]" in which DOJ stated: "'High level executives at US Airways have talked about how consolidation allows for capacity reductions that 'enable' fare increases.'"

47.     As a result, Senator Blumenthal urged the DOJ "to conduct a full and thorough investigation of anticompetitive, anti-consumer conduct and misuse of market power in the airline industry, evidenced by recent pricing patterns as well as remarks made at the IATA conference. Consumers are paying sky-high fares and are trapped in an uncompetitive market with a history of collusive behavior. If you find that these comments were coordinated to punish Southwest Airlines' announcement of capacity increases, I urge you to use all the tools at your disposal to punish this anti-competitive and anti-consumer behavior."

48.     On or about June 30, 2015, as reported in various news outlets across the country, the DOJ took action, sending civil investigative demands ("CIDs") to a number of airlines. According to NBC News, "the question is whether the major airlines are illegally coordinating with one another to limit capacity, which would have the effect of keeping fares up, to the detriment of passengers. The civil antitrust investigation by the Justice Department appears to focus on whether airlines illegally signaled to one another how quickly they would add new flights and routes and extra seats." The Associated Press reported that the CIDs were sent to Defendants herein.

49.     Senator Blumenthal issued a statement welcoming the DOJ investigation:

> "I am pleased that the Department of Justice has heeded my call to investigate anti-competitive conduct in the airline industry.

> "This investigation must be tireless and timely to save consumers from the onslaught of price increases in summer fares that may result from collusive and anticompetitive airline company misconduct. What airlines publicly call "discipline" is just a fancy term for constraining the flights available to consumers and raising prices and profits—which should be the investigation's sharp focus. The ongoing inquiry should target the potential

misuse of market power and anticompetitive misconduct, evidenced by recent pricing patterns as well as remarks at the recent IATA conference that appear coordinated to punish Southwest Airline's announcement of capacity increases.

"Just four major airlines now account for eighty percent of all domestic air travel. DOJ itself played a part in this consolidation by approving several mergers and now consumers are paying sky-high fares, as airlines keep capacity artificially low in a market with a history of collusive behavior."

50.    In a statement reported in the July 1, 2015 *Washington Post*, Senator Schumer also welcomed the investigation, stating: "It's hard to understand, with jet fuel prices dropping by 40 percent since last year, why ticket prices haven't followed." Senator Schumer added, "We know that when airlines merge, there's less price competition. What we need now is a top-to-bottom review to ensure consumers aren't being hurt by industry changes."

## VIII. CLAIM FOR RELIEF

### COUNT ONE

### VIOLATION OF THE SHERMAN ACT

*On Behalf of Plaintiffs and the Class, For Violation of*

*Sherman Act Section One, 15 U.S.C. § 1*

51.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

52.    During the Class Period, the Defendants have engaged and continue to engage in continuing agreements, contracts, or combinations to artificially raise, fix, maintain, and otherwise stabilize the price of domestic air transportation in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

53.    Defendants and their co-conspirators agreed to and did restrain trade and commerce by raising, fixing, maintaining, and otherwise stabilizing the price of domestic air transportation at higher levels than would have existed in the absence of their conduct.

54.    In carrying out their agreement, Defendants engaged in anticompetitive acts, the purpose and effect of which were to artificially raise, fix, maintain, and stabilize the price of domestic air transportation.

55.    Defendants' illegal acts had at least the following effects:

a.      Plaintiff and members of the Class paid Defendants higher prices than they otherwise would have for domestic air transportation.

b.      Plaintiff and members of the Class were deprived of free, fair, and open competition for domestic air transportation;

c.      Competition in the market for domestic air transportation was restrained, suppressed, or eliminated.

56.      As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Class have been injured and damaged in their property in an amount to be determined according to proof.

## IV. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff prays that the Court enter judgment on his behalf and on behalf of the Class herein, adjudging and decreeing that:

1.      This action may proceed as a class action, with Plaintiff as the designated Class representatives and Plaintiff's counsel as Class Counsel;

2.      Reasonable notice of this class action be provided to class members in accordance with Rule 23(c)(2) of the Federal Rules of Civil Procedure;

3.      The conspiracy alleged herein is a *per se* violation of the Sherman Act, 15 U.S.C. § 1;

4.      That judgment be entered against Defendants jointly and severally, and in favor of Plaintiff and the Class;

5.      That Plaintiff and the Class be awarded treble damages;

6.      That Plaintiff and the Class be awarded their reasonable attorneys' fees and costs, as well as pre-judgment and post-judgment interest as permitted by law;

7.      That Defendants, their parents, affiliates, subsidiaries, successors and all other persons or entities acting on their behalf be permanently enjoined and restrained from directly or indirectly continuing, maintaining, or renewing the combination, conspiracy, agreement,

1  understanding, or concert of action, or otherwise adopting or pursuing any practice, plan, program,

2  or design having a similar purpose or affect to restrain competition as described herein; and

3      8.      Plaintiff and members of the Class receive such other and further relief as may be

4  just and proper.

5                              **DEMAND FOR JURY TRIAL**

6      Plaintiff, on behalf of herself and the Class, hereby demand a jury trial on all causes of action

7  and claims with respect to which they have a right to jury trial.

8

9  DATED: July 21, 2015                    **COTCHETT, PITRE & McCARTHY, LLP**

10

11                                  By:   */s/ Steven N. Williams*
                                          Joseph W. Cotchett
12                                        Steven N. Williams
                                          Adam J. Zapala
13                                        Elizabeth Tran
                                          Joyce Chang
14                                        840 Malcolm Road
                                          Burlingame, CA 94010
15                                        Telephone: 650-697-6000
                                          Fax: 650-697-0577

16                                        *Attorneys for Plaintiff and the Class*

17

18

19

20

21

22

23

24

25

26

27

28